# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** <br><br> **WILLIAM D. STALLINGS,** <br><br> Debtor. | **Bankruptcy Case** <br> **No. 11-02736-JDP** |
| **JANINE REYNARD** <br> **Chapter 7 Trustee,** <br><br> Plaintiff, <br><br> vs. <br><br> **JACQUELINE UPDIKE,** <br><br> Defendant. | **Adv. Proceeding** <br> **No. 12-6007-JDP** |

_____

# MEMORANDUM OF DECISION

_____

**Appearances:**

    Matthew Christensen, ANGSTMAN, JOHNSON & ASSOCIATES, Boise, Idaho, Attorney for Plaintiff.

    Randal French, BAUER AND FRENCH, Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

*Introduction*

Plaintiff chapter 7[1] trustee Janine P. Reynard ("Trustee") commenced an adversary proceeding against non-debtor Defendant Jacqueline Updike ("Updike") to avoid certain allegedly fraudulent transfers made to Updike by debtor William Daniel Stallings, Jr. ("Debtor") prior to his bankruptcy. Shortly after answering Trustee's complaint, Updike filed a motion demanding a jury trial. At a pre-trial conference on May 1, 2012, the Court directed the parties to submit briefs regarding Updike's request for a jury trial, and took the matter under advisement. Having considered the parties' submissions, and applicable law, this Memorandum resolves the jury trial issue.

*Facts*

According to the pleadings,[2] Updike and Debtor are in a relationship

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, or to the Federal Rules of Civil Procedure, Civil Rules 1–86.

[2] These facts are from Trustee's complaint and Updike's Brief in Support
(continued...)

MEMORANDUM OF DECISION - 2

and live together. In November 2009, Updike purchased a home in Meridian ("the Property"). Updike obtained $200,000 to acquire the Property through loans from her parents and Debtor's mother. The loan from Debtor's mother was evidenced by a promissory note for $80,000 signed by both Updike and Debtor. In this action, Trustee asserts that the loan from Debtor's mother, or at least $50,000 of it, was made directly to Debtor, who later transferred the money to Updike to purchase the Property. Updike executed a Deed of Trust against the Property in favor of her parents and Debtor's mother.

In June 2011, Debtor transferred a 2006 Ford F150 truck, a 2003 Lexus RX300, and a 2004 Pioneer camp trailer to Updike for approximately $29,500. On the same day, Debtor allegedly paid Updike $44,550[3] to acquire a one-half interest in the Property.

---

[2](...continued)
of Request for Jury Trial, and, unless otherwise noted, are undisputed.

[3] The $44,550 included the $29,500 consideration paid to Debtor by Updike for the sale his vehicles; the remainder was money withdrawn from his retirement account.

MEMORANDUM OF DECISION - 3

Debtor filed a chapter 7 bankruptcy petition on September 7, 2011, and Trustee was appointed. Debtor's schedules made no mention of Updike, as a codebtor, a creditor, or otherwise, and Updike has not filed a proof of claim in the bankruptcy case. Trustee commenced this adversary proceeding against Updike on February 9, 2012, in which she seeks to avoid (1) Debtor's transfer of the $50,000 Debtor borrowed from his mother and gave to Updike; and (2) Debtor's transfer of his vehicles to Updike. Trustee bases her avoidance claims on § 548(a)(1)(A) and (B) and state law applicable through § 544(b).[4]

Updike filed an answer to Trustee's complaint, and later, filed a motion demanding a jury trial.[5] In her brief, Updike argues she is entitled to a jury trial in this action under the Seventh Amendment, as interpreted

---

[4] Also, assuming she prevails on an objection to Debtor's claim of exemption in the Property, Trustee's adversary proceeding seeks § 363(h) approval to sell the Property free and clear of Updike's interest.

[5] Updike's motion demanding a jury trial provides that she made the demand "pursuant to [Civil] Rule 38(a)." Dkt. No. 7. It is presumed that Updike meant the demand is made pursuant to Civil Rule 38(b).

MEMORANDUM OF DECISION - 4

and applied in bankruptcy proceedings.[6]  Trustee filed no brief and has taken no position regarding Updike's asserted jury trial right.

*Discussion*

Civil Rule 38(a), made applicable in adversary proceedings by Rule 9015(a),[7] provides:

> The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate.

The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

Thus, a threshold question in any action where a party asserts a right to a jury trial is whether that action is a "[s]uit[] at common law."

---

[6] Updike relies solely on the Seventh Amendment, and not any federal statute, as providing her jury trial right.

[7] Local Bankruptcy Rule 9015.1 specifies that Civil Rule 38 applies to bankruptcy cases in the District of Idaho.

MEMORANDUM OF DECISION - 5

The Supreme Court has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830)) (emphasis in original). Along the way, the courts have developed a standard analysis to determine whether a particular cause of action is one in which legal rights are to be ascertained and determined. *Id.* at 42. First, a court compares the subject statutory action to actions brought before the English courts of law and equity in the 18th century. *Id.* Second, and more importantly, the court examines and determines whether the remedy sought is legal or equitable in nature. *Id.* Then, if the first two factors indicate the case implicates or invokes legal rights, the court must determine whether the claim asserts a "public right" or a "private right." *See id.* at 42 & n.4; *Stanbrough v. Valle (In re Valle)*, 469 B.R. 35 (Bankr. D. Idaho 2012). Only those claims that are legal in nature and that assert a "private right" are entitled to a jury trial by

MEMORANDUM OF DECISION - 6

the Seventh Amendment.  *See Granfinanciera*, 492 U.S. at 42 & n.4, 53.

A matter arising between a party and the government is the most obvious type of "public rights" case, but it is not the only type of such cases.  *Id.* at 54 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 (1982)).  Where a suit does not involve the government as a party, the crucial question is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, has created a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary."  *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 593–94 (1985)) (internal quotations and alterations omitted).  In other words, if the government is not a party, and if the statutory right in question is not closely intertwined with a Congressionally enacted federal regulatory program, the right is a "private right," and must be adjudicated by an Article III court.  *Id.* at 54–55.

In this adversary proceeding, Trustee asserts she may avoid and

MEMORANDUM OF DECISION - 7

recover the subject transfers under § 548(a) and § 544(b) as fraudulent conveyances. Her claims are therefore similar to actions which, in the late 18th century, would have been brought before English courts at law and conducted before juries. *Id.* at 43 ("There is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England."). In addition, through her adversary proceeding, Trustee seeks entry of a money judgment against Updike for the amount transferred to her by Debtor. Trustee's Complaint at 5–7, Dkt. No. 1. Where monetary damages are sought in fraud-related cases, including fraudulent transfer cases, such are seen as legal actions. *See Granfinanciera*, 492 U.S. at 47–49 (citing a century's worth of Supreme Court precedent); *see also Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990) (explaining that where, as here, a party has not submitted a claim against the bankruptcy estate, "the trustee can recover . . . transfers only by filing what amounts to a legal action to recover a monetary transfer"). Finally, the Supreme Court has determined that fraudulent conveyance actions are best-characterized as involving private rights, in that such suits "constitute

MEMORANDUM OF DECISION - 8

no part of the proceedings in bankruptcy but concern controversies arising out of it–[and] are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res," and "therefore appear matters of private rather than public right." *Id.* at 56 (quoting *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94–95 (1932)) (internal quotations omitted).

### *Conclusion*

Updike is entitled to a jury trial[8] in this action under the Seventh Amendment. In a separate order, Updike's motion demanding a jury trial will be granted.

---

[8] The outcome here would likely have been different had Updike filed a proof of claim in Debtor's bankruptcy case. *See Granfinanciera*, 492 U.S. at 58–59 & n.14; *Langenkamp*, 498 U.S. at 43–45.

MEMORANDUM OF DECISION - 9

Dated: June 19, 2012

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 10